**OXFORD DEVELOPMENT, INC., Respondent,**

v.

**COUNTY OF RAMSEY in the State of Minnesota, et al., Appellants.**

**No. C3–87–1540.**

Court of Appeals of Minnesota.

Jan. 12, 1988.

John A. Murray, St. Paul, Robert J. Sheran, Rodney A. Honkanen, Minneapolis, for respondent.

Tom Foley, Ramsey Co. Atty., David MacMillen, Asst. Co. Atty., St. Paul, for appellants.

Heard, considered and decided by LANSING, P.J., and NORTON and IVERSON,* JJ.

## OPINION

IRVING C. IVERSON, Judge.

This appeal arises from real estate tax litigation regarding the Town Square property located in downtown St. Paul, Minnesota. The trial court issued a temporary injunction enjoining the appellant Ralph Peterson from participating in the tax litigation and from communicating certain information with the Ramsey County Attorney's Office. Respondent Oxford Development Minnesota, Inc. (Oxford) sought to enjoin Peterson's participation in the litigation due to his prior representation of Donaldsons, Inc. (Donaldsons) and his alleged position as consulting counsel with Oxford in related tax matters. Ramsey County, the Ramsey County Attorney, and Ralph Peterson appeal the temporary injunction. We remand.

## FACTS

Between 1969 and 1986 appellant Ralph Peterson was engaged in private practice, and acted as outside legal counsel to Donaldsons. In addition to other matters, Peterson handled Donaldsons' property tax litigation.

In March 1983, Peterson filed property tax petitions for Donaldsons' Town Square store. Donaldsons' lease with Oxford required payment of a pro rata share of property taxes levied on the Town Square property, and the petition was filed to protect their interests because the store was not a separate tax parcel. Donaldsons sought to protect their method of property valuation from any inconsistent theories used by Oxford, and also to preserve any rights should they be able to obtain separate tax parcelling.

In May 1984, Peterson dismissed the tax petitions on Donaldsons' behalf. He claims the petitions were dismissed because Donaldsons was unable to obtain separate parceling for the Town Square store, while Oxford claims the petitions simply were dismissed after Peterson discovered Oxford had filed a similar petition.

At any rate, Peterson and Donaldsons took an active interest in the ongoing tax litigation to protect Donaldsons' valuation theory. In December 1984, Peterson, officials from Oxford and Donaldsons and Oxford's legal counsel met and discussed the Town Square tax litigation. The affidavit of Oxford's attorney indicates that strategies, facts, and the merits of the litigation were discussed. Peterson claims to have no recollection of obtaining any confidential information related to the tax litigation.

In April 1987, Peterson was offered a job with the Ramsey County Attorney's Office, with the expectation that he would be significantly involved with the Town Square tax litigation. Peterson reviewed the conflict issue with independent counsel, and was advised there was no conflict. In addition, he obtained the consent of a Donaldsons' vice president. However, the vice president already had submitted his resignation at the time consent was given, and shortly thereafter left for Washington state.

Upon learning of Peterson's new position with Ramsey County, Donaldsons, Oxford, and Peterson's former law partners strongly opposed his involvement in the Town Square litigation. As a result, Oxford sought an injunction enjoining Peterson from discussing or participating in the Town Square tax litigation or related matters. Oxford contended that Peterson's former position as Donaldsons' counsel and consulting counsel to Oxford on the tax litigation constituted a conflict of interest and placed him in a position to use confidential information adverse to Oxford, Donaldsons and other Town Square tenants.

The trial court granted Oxford a temporary injunction enjoining Peterson's partic-

*Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ipation in the tax litigation and other related roles. The court further enjoined him from communicating any confidences to other Ramsey County attorneys, and also enjoined Ramsey County, Tom Foley (Ramsey County Attorney), and other Ramsey County attorneys from communicating with Peterson in regard to any confidences or fiduciary information of Oxford, Donaldsons, or other Town Square tenants. The trial court made no specific findings of fact supporting its grant of a temporary injunction.

## ISSUE

Did the trial court err in failing to make findings of fact and conclusions of law when it granted the temporary injunction?

## ANALYSIS

The sole issue on appeal from a trial court's determination on a motion for an injunction is whether the trial court abused its discretion. *Thompson v. Barnes*, 294 Minn. 528, 533, 200 N.W.2d 921, 925 (1972). Minn.R.Civ.P. 65.02 authorizes the grant of a temporary injunction "if by affidavit, deposition testimony, or oral testimony in court, it appears that sufficient grounds exist therefor."

In addition, Minn.R.Civ.P. 52.01 provides:

In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and *in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.*

(Emphasis added.)

In ruling upon a motion for a temporary injunction, the trial court generally must consider the five factors for reviewing the grant or denial of a temporary injunction set out in *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). The trial court's failure to make the appropriate findings or conclusions of law constitutes error, requiring reversal and remand. *Crowley Co., Inc. v. Metropolitan Airports Commission*, 394 N.W.2d 542, 545 (Minn.Ct.App.1986). In *Crowley*, this court recently ruled:

The determination of the individual *Dahlberg* factors should have taken place at the trial court level. Absent findings, we do not know what the trial court concluded on the issues, and thus we cannot determine whether the denial of [the motion for an injunction] constituted an abuse of discretion.

*Id.*

Here, the trial court did not make any findings of fact or conclusions of law. Moreover, the court failed to discuss any of the five factors set out in *Dahlberg*, and failed to determine whether Oxford had an adequate remedy at law. The trial court issued only an order granting the temporary injunction enjoining the appellants from certain communications and legal representation regarding the Town Square tax litigation. Without the appropriate fact findings or conclusions of law, either in writing or orally on the record, this court similarly cannot determine on appeal whether the trial court abused its discretion in granting the temporary injunction. Thus, we remand for the appropriate fact findings and legal conclusions.

We remand for findings concerning the trial court's rather broad order enjoining Ramsey County and its attorneys from communicating with Peterson regarding the litigation, and by prohibiting communication and representation with respect to the "other tenants." The practical application of the order enjoining Ramsey County attorneys from communicating to Peterson proves difficult since the court also has ordered Peterson to refrain from communicating with Ramsey County attorneys on the same subject. We also remand for further findings regarding the application of the injunction to other Town Square tenants because of the minimal showing of

representation, confidential information or irreparable injury on behalf of the "other tenants."

Subsequent to the filing of this appeal, Oxford moved this court for an order to strike appellants' answer included in the appendix to their brief because it was filed after the filing of the temporary injunction. Oxford's motion is denied so that appellants may assert defenses to the temporary injunction request at the remanded hearing.

## DECISION

Reversed and remanded.