EDINA COMMUNITY LUTHERAN CHURCH, et al., Appellants,

v.

STATE of Minnesota, Respondent.

No. A03–723.

Court of Appeals of Minnesota.

Jan. 13, 2004.

David L. Lillehaug, Marian E. Saksena, Fredrikson & Byron, P.A., Minneapolis, MN, for appellants.

Mike Hatch, Attorney General, Hilary Lindell Caligiuri, Deputy Attorney General, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, WILLIS, Judge, and ANDERSON, Judge.

## OPINION

KLAPHAKE, Judge.

In this declaratory judgment action, appellants Edina Community Lutheran Church, church ministers Erik Strand and Pamela Fichenscher, and church member R. Daniel Rasmus [1] challenge the district court's order denying in part their motion for injunctive relief. Appellants allege that the district court erred by concluding that they lacked standing because there was no justiciable controversy and that it abused its discretion by refusing to enjoin enforcement of Minn.Stat. §§ 624.714 and 609.66, subd. 1d (Supp. 2003) (the act) as applying to appellants' parking lots, employees, and leased areas.

Because the act affects appellants' property rights and their right to free religious exercise under the Minnesota Constitution, an actual controversy exists that involves adverse interests and is capable of specific relief. We therefore conclude that appellants have standing to challenge the act, and we reverse that part of the district court's order. Because the district court failed to make findings that permit a meaningful review of its denial of temporary injunctive relief, we reverse and remand on this issue.

## FACTS

The Edina Community Lutheran Church is a small congregation with a church building, a contiguous parking lot, and a parsonage that is leased to its pastor. As part of its religious mission, appellants lease Sunday school space and a playground to a child-care center. Worship services or church functions are occasionally held in parking areas or leased areas of the building; employees park in the church parking lot. The other plaintiffs joined in the amended complaint are also owners of property, including buildings and parking lots, employers, landlords, and operators of child-care centers.

On May 28, 2003, the Minnesota Citizens' Personal Protection Act of 2003, which is more popularly known as the "conceal and carry" law, became effective. See 2003 Minn. Laws ch. 28, art. 2, §§ 1–36 (now codified at Minn.Stat. §§ 624.714 and 609.66, subd. 1d). Appellants determined that the signage requirements and restrictions of the act that limit control of their church property conflict with their religious mission and worship practices. Appellants decided that they wanted to prohibit firearms from their building, parking areas, and leased spaces.

On May 29, 2003, appellants brought a declaratory judgment action, challenging the constitutionality of the act as applied to them and requesting a declaration that they can prohibit the possession of firearms on their property, including parking lots and leased premises, by whatever means they see fit to use. On June 6, 2003, the district court issued an order granting appellants' motion for a temporary injunction in part and denying it in part. Specifically, the district court temporarily enjoined that part of the statute that requires appellants to post a sign of specified size and typeface and to make an oral request to persons entering the building in order to ban firearms from the church building. Minn.Stat. § 624.714, subd. 17(b). Instead, the district court permitted appellants to use the less restrictive means of Minn.Stat. § 624.714, subd. 17(d) to ban firearms from the church building.[2]

---

1. Parties to this action include a number of plaintiffs who joined in the amended complaint, but are not, as a formal matter, appellants here.

2. Because the state has not challenged the

The district court denied injunctive relief as to the remainder of appellants' motion, which challenged other provisions of the act. These particular sections of the act prohibit a private establishment, including a church, from banning firearms in its parking areas, a landlord from restricting the lawful carry or possession of firearms by a tenant, an employer from restricting possession of firearms in its parking areas, or a child-care operator from restricting possession of firearms by a person in a motor vehicle while in the child-care parking area. Minn.Stat. § 624.714, subd. 17(c), (e), subd. 18(c); Minn.Stat. § 609.66, subd. 1d(d)(4)(ii), (e)(2), (e)(7), (e)(8) (Supp. 2003).

The district court's order and memorandum included the following facts, which were either stipulated or unchallenged: (1) appellants' religious beliefs and rights of conscience are sincerely held; (2) appellants' real property, including its parking areas, is used at times for church functions, as worship space, and for other church activities; and (3) appellants have employees, tenants, and a licensed child-care center that may be affected by various provisions of the act. The district court based its denial of appellants' motion on a finding that appellants had no standing because there was no justiciable controversy.

## ISSUES

1. Did the district court err by concluding that appellants lack standing to challenge the act because there is no justiciable controversy?

2. Did the district court abuse its discretion by refusing to enjoin enforcement of certain portions of the act?

district court's grant of injunctive relief as to the signage requirements under the act, we

## ANALYSIS

### I. Justiciability and Standing

 The reviewing court considers de novo the question of standing, as an aspect of justiciability. *Schiff v. Griffin,* 639 N.W.2d 56, 59 (Minn.App.2002). Because it is essential to establishing the court's jurisdiction, the question of justiciability may be raised at any time. *Cincinnati Ins. Co. v. Franck,* 621 N.W.2d 270, 273 (Minn.App.2001).

 Standing is a necessary prerequisite before a party may seek relief from a court. *State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 493 (Minn.1996). "Standing is acquired in two ways: either the plaintiff has suffered some 'injury-in-fact' or the plaintiff is the beneficiary of some legislative enactment granting standing." *Id.* The presence of an injury in fact assures that the party has a sufficient stake in a justiciable controversy. *Id.*

 "Justiciability generally requires (1) a genuine or present controversy (2) presented by persons with truly adverse interests and (3) capable of specific rather than advisory relief by a decree or judgment." *Rice Lake Contracting Corp. v. Rust Env't. & Infrastructure, Inc.,* 549 N.W.2d 96, 99 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996). In the context of a declaratory judgment action, this may involve a declaration of rights, status, or legal relationship to decide a controversy at its inception. *Franck,* 621 N.W.2d at 273–74.

A declaratory action is a justiciable controversy if it (a) involves definite and concrete assertions of right that emanate from a legal source, (b) involves a genuine conflict in tangible interests be-

need not address that part of the order.

tween parties with adverse interests, and (c) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion.

*Id.* at 273. In other words, there must be "a direct and imminent injury" rather than a "merely possible or hypothetical injury." *Kennedy v. Carlson,* 544 N.W.2d 1, 6 (Minn.1996) (quotation omitted).

The state suggests, and the district court apparently agreed, that any injury to appellants is merely hypothetical, because the act lacks an enforcement provision. For several reasons, we disagree.

■ First, the act specifically states that the owner of a private establishment "may not prohibit" a permit holder from carrying a firearm in a parking area or parking facility. Minn.Stat. § 624.714, subd. 17(c). Appellants, according to the hearing transcript, have posted signs prohibiting the possession of firearms in their parking areas. This puts appellants in direct conflict with the act and provides more than a theoretical framework to challenge enforcement of the act. A law may be enforced in a variety of ways, even absent a specific penalty provision. *See State ex rel. Hatch v. Am. Family Mut. Ins. Co.,* 609 N.W.2d 1, 3 (Minn.App.2000) ("The attorney general may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of this state, the preservation of order, and the protection of legal right."), *review denied* (Minn. June 13, 2000).

■ Second, the restrictions of the act have affected appellants' property rights. Appellants are not permitted to control their parking areas or leased areas by prohibiting firearms or by otherwise enforcing such prohibitions under the law of trespass. Minn.Stat. § 624.714, subd.

17(c), (e), subd. 18(c). The right to exclude others is an essential part of general property rights. *PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 82, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 (1980). In *Prune-Yard,* the Supreme Court concluded that allowing free expression activities, such as collecting signatures on a petition, did not impair the economic value or use of the shopping center. *Id.* at 83, 100 S.Ct. at 2042. Here, the act threatens to impinge not on the economic viability of appellants' property, but on the use of appellants' property for their religious mission and worship practices. Regardless of whether or not appellants are ultimately successful, a justiciable controversy is presented by the issue of whether this act infringes on appellants' property rights.

■ Third, by asking appellants to "tolerate" an action that conflicts with their religious mission and beliefs, the state arguably is infringing on appellants' right to free exercise of religion, guaranteed by Minn. Const. art. I, § 16. As the state argues, state regulations, such as the Minnesota Human Rights Act or the Minnesota Labor Relations Act, apply to religious organizations when dealing with employment issues that are not doctrinally related. *See Hill–Murray Fed'n. of Teachers v. Hill–Murray High School,* 487 N.W.2d 857, 866 (Minn.1992); *State by McClure v. Sports & Health Club, Inc.,* 370 N.W.2d 844, 853 (Minn.1985). But Minn. Const. art. I, § 16 "precludes even an infringement on or an interference with religious freedom." *State v. Hershberger,* 462 N.W.2d 393, 397 (Minn.1990) (emphasis omitted). Where a free exercise claim is involved, we move cautiously, because "[i]f courts begin to question a church's basis for doctrinal decisions, a church may be compelled to conform its religious beliefs with the government's or the majority culture's beliefs." *Geraci v. Eckankar,*

526 N.W.2d 391, 399 (Minn.App.1995), *review denied* (Minn. Mar. 14, 1995). It would be disingenuous for us to deny the existence of a justiciable controversy where appellants have raised an arguably viable challenge to free exercise.

The uncontroverted facts presented to this court are that appellants' beliefs and rights of conscience are sincerely held, that the parking areas and other property are used as part of its religious mission or in its worship practices, and that appellants have employees, tenants, and a childcare center that will be affected by the act. Based on these facts, we conclude that the district court erred in determining that appellants lacked standing for want of a justiciable controversy.[3]

## II. Denial of Injunctive Relief

■■■ This court will not reverse the district court's grant or denial of a temporary injunction absent an abuse of discretion. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 451 (Minn.App. 2001). Five factors are considered in determining whether a temporary injunction should be granted: (1) the nature and relationship of the parties; (2) the balance of relative harm between the parties; (3) the likelihood of success on the merits; (4) public policy considerations; and (5) any administrative burden involving judicial supervision and enforcement. *Metro. Sports Facilities Comm'n v. Minn. Twins P'ship.*, 638 N.W.2d 214, 220–21 (Minn. App.2002) (citing *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965)), *review denied* (Minn. Feb. 4, 2002). In applying these factors, the district court must make findings sufficient to "permit meaningful appellate review." *Id.* at 220. "Absent findings, we do not know what the trial court concluded on the issues, and thus we cannot determine whether denial of [appellant's] motion constituted an abuse of discretion." *Crowley Co. v. Metro. Airports Comm'n*, 394 N.W.2d 542, 545 (Minn.App. 1986).

■■■ Here, the district court discussed the *Dahlberg* factors as they apply to the act's signage requirements. But when addressing appellants' challenge to the act's prohibition against restricting guns in their parking areas and leased premises, the district court states only that the state's arguments regarding justiciability and standing are "persuasive." In light of our decision that appellants have standing, the district court's conclusory statement does not provide us with sufficient findings to permit review. We therefore reverse the district court's order denying temporary injunctive relief and remand this matter for further proceedings.

## DECISION

Because the district court erred in concluding that appellants lack standing to challenge the act, we reverse. Appellants have presented a genuine controversy capable of specific relief. But because we are unable to make a meaningful review of the district court's denial of injunctive relief without findings applying the *Dahlberg* factors, we remand for further proceedings.

**Reversed and remanded.**

---

3. The state also argues that appellants lack standing because not all present and future permit holders have joined in this action. Appellants' requested relief is limited to enjoining enforcement of the statute; it is therefore unnecessary and impractical to join all permit holders. Further, this information is not available to appellants. *See* Minn.Stat. § 624.714, subd. 15(a) (Supp. 2003) (establishing database of permit holders and limiting access to law enforcement agencies).

G. BARRY ANDERSON, Judge (concurring specially).

I concur in the result.